Case 21-1782, U.S.A. v. Emanuele Palma, Argument Not to Exceed 15 Minutes per Side. Mr. Lang, you may proceed for the appellant. Good afternoon, Your Honors, and may it please the Court, Andrew Lang for the United States. I'd like to reserve two minutes for rebuttal. May. The superseding indictment more than adequately alleges that Palma conspired to commit wire fraud by agreeing to deceive Fiat Chrysler's customers about the properties of the vehicles they were buying in order to obtain their money. That theory of wire fraud is straightforward, convergent, unaffected by Kelly, and amply supported by the allegations and factual details in the superseding indictment. This Court should reverse the judgment of the District Court holding otherwise. Let me begin by briefly outlining the contours of the fraud as alleged in the superseding indictment, because although the fraud involves some technical detail and jargon, which is spelled out in the indictment and summarized in our brief, the structure of the fraud as a legal matter was straightforward. During the development of a new 3.0 liter diesel engine that would eventually become part of the so-called subject vehicles, Palma and his co-conspirators were effectively trying to satisfy two different sets of objectives. They had regulatory objectives, they needed to meet the EPA and CARB emission standards, and they also had marketing or performance objectives that Fiat Chrysler generally had and that they imposed on VM. They were trying to meet certain criteria in order to make sure that the vehicles could be marketed as fuel-efficient, as best-in-class in terms of fuel efficiency and emissions compliant. Is there any allegation that the marketing department at Chrysler was involved in the conspiracy or had any knowing participation? I don't believe there's an explicit allegation that the marketing department was involved in the conspiracy. Of course, the indictment refers to other conspirators known and unknown to the grand jury, but I believe the answer to your Honor's question is no. Is it necessary for the government to prove that marketing had some knowledge of what was going on? No, Your Honor, it's not. And as a general matter, I would say that's not a requirement. What might be required is that there is a causal connection between the wire fraud that was contemplated by the conspiracy and the ultimate deprivation of money or property from customers. So whether or not a particular sub-component of the corporation was involved in the conspiracy, that causal connection is alleged. Because during the development of the engines, as the indictment explains, Palma and his co-conspirators realized that they couldn't meet both of those sets of objectives at once, the regulatory objectives and, shall we say, the marketing objectives. So in a word, the co-conspirators cheated. They engineered so-called cycle-beating strategies in order to make the vehicles perform one way when they were being tested by regulators and another when they were being driven under real-world conditions. So they were trying to meet the diesel exhaust fluid refill interval goal that the corporation had. They were trying to meet the 30 mpg fuel efficiency goal that the corporation had imposed and that VM was behind on as alleged in the indictment. And so in order to do that, they used these cycle-beating strategies. And ultimately, that led to the misrepresentations that were communicated to consumers as alleged in the indictment by Palma and the co-conspirators. They made and caused to be made those misrepresentations. They communicated to consumers that the vehicles were both emissions compliant and fuel efficient when in reality they were one or the other but not both at the same time. Let me turn to the district court's opinion and the ways in which the district court found fault with those allegations in the indictment. The district court's opinion essentially faults the superseding indictment in two ways. First, by concluding that there was an inadequately alleged causal connection between Palma's personal conduct and the deprivation of money or property. And second, the district court characterized the superseding indictment as quote-unquote repackaging a theory of regulatory fraud that Kelly and of course Cleveland made clear would be impermissible. But both of those conclusions are incorrect. First, with respect to the causal connection between Palma's conduct and the ultimate deprivation, there are a couple of problems with the district court's reasoning. First and foremost, the district court and Palma in his brief on appeal overlooked the explicit allegations in the superseding indictment that indeed Palma did make or cause to be made misrepresentations to consumers. Whether the government will ultimately be able to prove those allegations is of course a question for trial, but deciding that question against the government at this stage is at best somewhat premature. The district court also overlooked the fact that Palma is charged not with substantive counts of wire fraud, but with conspiracy to commit wire fraud. So the indictment need only allege and the government need only prove that Palma conspired to commit wire fraud and that he intended that wire fraud be committed. It doesn't have to allege or prove that Palma personally himself committed wire fraud, although of course the indictment effectively does do that by alleging that Palma was responsible for those communications. The district court and Palma on appeal also both rely very heavily on the First Circuit's opinion in United States versus Baroah, which discussed at some length this idea of a causation requirement. But Baroah is inapposite for a factual reason and I think a procedural reason. On the facts, Baroah criticized the government's evidence at trial for exclusively proving fraudulent conduct that related to regulators, and the Court of Appeals was unable to find any evidence of fraudulent conduct that was actually directed at the consumers, the patients in that case, who actually lost money. The defendants in Baroah engineered the most low-tech imaginable fraud. I think they literally whited out their low scores on medical board exams and then photocopied higher scores on top. But there was no connection between their conduct, their fraudulent deceptive conduct, and the ultimate deprivation of property from patients in some cases years later. In this case, of course, the superseding indictment does allege such a direct connection as I've explained. The procedural distinction between Baroah and this case is that Baroah, of course, involved the sufficiency of the evidence. So the Court of Appeals was reviewing all of the evidence, all of the proof that the government was actually able to introduce, whereas here we're dealing with a superseding indictment, the allegations of which must be accepted as true at this stage. Let me now turn to the second way in which the District Court faulted the superseding indictment. The District Court characterized it, as I said, as repackaging a theory of regulatory fraud that would be impermissible under Kelly. But that conclusion is incorrect, and I think a reexamination of the facts of Kelly can make that clear. In Kelly, of course, the defendant's sole object, what they really wanted to accomplish through the Bridgegate conspiracy, was a regulatory object. The sole target of their fraud was the realignment or the closure of the access lanes from Fort Lee to the George Washington Bridge. And it so happened that in order to accomplish that objective, they needed the Port Authority to spend some employee time and money. But the Supreme Court rejected the government's contention that that was sufficient for the fraud convictions because those costs were merely incidental. They were implementation costs of the scheme that actually only ever targeted a regulatory interest. If anything, the allegations here are a mirror image of Kelly. Yes, there is a regulatory interest involved, and yes, of course, there is deception of regulators. But the regulatory approval that the conspirators sought was a necessary but intermediate step toward selling cars. The ultimate objective of the conspirators, and I would argue the ultimate objective of any car manufacturing company, is money in customers' pockets. The ultimate objective of the fraud, as the superseding indictment does explicitly allege, was money or property in the hands of customers. Regulatory approval was a necessary but intermediate step. There's no allegation that the, that Palma is to benefit personally, monetarily from this. The allegation is that the company would benefit. Yes, but that's not necessary for him to personally benefit. That's correct. But suppose you get to trial and they have a theory of, well, I was just interested in, you know, boosting my profile as an R&D person, that I could achieve this with the it was just, that was the only reason I was doing this. Wouldn't that be a basis that they might, at that point, could say you don't have enough evidence to link the ultimate fraud to the, to the customer, to, to Palma? A couple of responses to that, Your Honor. So first of all, yes, Your Honor is correct that personal benefit is not an element of wire fraud, as this court has made clear, I think, in the United States versus Kennedy. I think, however, motive, of course, is always relevant. So the extent to which Palma did or didn't personally benefit might be relevant. There might be admissible evidence along those lines that the jury could consider. Finally, I would agree with Your Honor's premise that I think if the only evidence were that Palma only ever intended to obtain a regulatory choice, if his intent in the I don't anticipate that that's how the evidence will come in, but I, I agree with Your Honor's hypothetical. That having been said, the superseding indictment more than adequately alleges that there is a causal connection between Palma's conduct and the deprivation of property. And even if it didn't, that kind of explicit allegation is unnecessary because Palma is charged with conspiracy to commit wire fraud, not substantive wire fraud. It also makes clear that the scheme targeted money in customers' wallets, not, or not only, a regulatory choice, and therefore the theory is permissible under Kelly. And unless the court has any other questions on these subjects or the convergence issue, I'm happy to come back on rebuttal. Okay. Thank you. We'll hear from you on rebuttal. Thank you. Good afternoon, and may it please the court. My name is Greg Andres, and I represent Mr. Palma, the defendant of Kelly. If I could start with answering your questions, Judge Bush, and I would direct you specifically to the superseding indictment. First, no one in the marketing department is referenced anywhere in this 40 page indictment. No marketer is accused or identified as a co-conspirator anywhere. Is it your contention that to state this count, there has to be some knowledge on the part of someone in marketing of what's going on? Here, it's the company. The indictment clearly says that the company was responsible for every single action identified under count eight, and I'm going to go through each one of those. But I wanted to make that point clear because there can be no doubt that the superseding indictment makes no allegations about anyone in the marketing department. And beyond that, that is one of the steps in between that Judge Edmonds relied on. There are several, to be clear. Mr. Palma is involved in the production of the engines. And then there are others at FCA who are presumably involved with marketing and selling, and actually another department altogether that's responsible for that. That is not Mr. Palma's job. I want to make one other thing clear. When the government said that Mr. Palma had two goals, one of which was to satisfy the regulatory issues, that is to get certification from the regulators. And the second was to sell cars. That is flatly wrong, not because of something I say, but because of the superseding indictment. Mr. Palma is alleged in paragraph four for working for a subcontractor of Fiat Chrysler. He is not, during periods of this indictment, and certainly during the periods that are alleged where he's marketing, he's not an employee of FCA. He is an employee. He's an employee at some point, doesn't he? He does, Your Honor. Absolutely. At some point, Fiat Chrysler acquires VM Notori. But my point is that his job, whether it was at VM Notori or at Fiat Chrysler, was never to sell cars. Well, that brings me to another point. I mean, what sort of concerns me here is that I don't understand fully why this should be a pleading issue as opposed to a proof issue. It's really unusual to dismiss a count of the indictment or for somebody to move. I mean, ordinarily, we wait to the criminal trial and we find out what the government has. And what is it, I'm struggling to figure out why this should be something that is appropriate for consideration in this posture, in the motion to dismiss posture. Understood, Judge Givens. Here's why. The law requires that the indictment set out sufficient facts that under law would constitute a premium. Well, we all know the standard, right? So if you look at the superseding indictment, there are allegations mirroring the statute that the defendant caused, either was involved in the marketing or caused people to make statements to marketing or to the customers. And if you look at the superseding indictment, in each one of the facts that the government didn't have to allege these facts, but they did, each one of the facts that the government alleges that Mr. Palma caused the marketing or FCA people to send to the consumers, the link between Mr. Palma and the consumers, each one of them doesn't prove anything. It doesn't provide any facts on their face. How do we even know what the government's proof is going to be on that? Well, I'll tell you why, Your Honor. Maybe you know through discovery in the case, but I cannot discern the legal inadequacy that you are referring to from the face of the indictment. I'll tell you why, Your Honor, but thank you for asking that question. First of all, to be clear, we're not relying on any evidence that the government would prove or not prove at trial. Everything that I'm arguing about today and everything in our papers relates to what is in the superseding indictment. So if you look at count eight, the conspiracy charge, again, referring to the indictment, the first thing- Do you remember what page it's on? I unfortunately did not have it. Don't worry about it. It's on page 37, Your Honor. I'm happy to go through it line by line. So the first thing that the wire fraud count does in paragraph 102, it incorporates the rest of the indictment. Okay? So the first thing it does is it incorporates the fraud on the government theory that's in the prior 36 pages about the allegations that Mr. Palmer lied to the EPA, that there's a Clean Air Act violation. There's no dispute that the government's, I think they call it a multi-layered fraud, begins with the fraud on the government. Okay? And then if you go through each one- It would seem you could sort of skip to about paragraph 113, where they start talking about purchasers. Couldn't you? Certainly, Your Honor. If you go through- And, you know, that sort of continues after that. I mean, the focus, it seems, ought to be on the sufficiency of those allegations. Agree a thousand percent, Your Honor. So if you go to paragraph 117, it talks about FCA, the company, marketing, the subject vehicles. There's no allegation there that Mr. Palmer was involved in marketing. So there's no facts there that would prove his involvement in the conspiracy or tie him to the customers. And also in paragraph 117, you have a reference to the labels that are affixed to the car. Everybody's seen them. When you buy a new car, there's labels on there that say EPA and DOT information. Mr. Palmer is not alleged to have reviewed those stickers, to have provided the information, or to have put those stickers on the car. Wouldn't he? I mean, the government wouldn't have to prove things like you put the sticker on the car. Your Honor, they included the label, the labeling issue in the indictment. Well, I understand, but I still am not seeing why it's not a pleading issue as a proof issue as opposed to a pleading issue. And the answer is, Your Honor, that the government pled specific facts. And those facts are not, do not tie Mr. Palmer to the customers in a way. One of the facts in the, in the, um. That he's not tied to the consumer other than by proof about his, uh, regulatory work? Well, if they, if they conceded that, then they have a Kelly problem. But I heard the government just say that Mr. Palmer had two jobs. One was to get regulatory approval, and one was to sell cars. And the selling cars, which is the gravament of the wire fraud conspiracy, is not true. It's not pled that way. But normally we decide, the jury decides whether it's true at the end of the case. I would, Your Honor, I understand that, that concept. But nonetheless, there is a pleading requirement to, to, if the government includes facts, and they have, that those facts make out the crime. And my point is that the allegations about, if you go further along in the indictment, he's invited to a meeting. He's invited to a meeting, a public meeting that shows where the cars are, are displayed. It can't be that if the government is putting forth these allegations to prove Mr. Palmer's involvement with respect to selling cars, that him getting advertisements from FCA, from the company, or from him getting invitations or press that he's not involved in, it shows he's not involved in the marketing or the selling. And that, and my point, Your Honor, is there are no facts alleged that show his involvement in any way with respect to customers or marketing. And that's why this isn't an issue for the jury. That's why this is a pleading issue and it shows why the, why the indictment is deficient. And that's why Judge Edmonds dismissed this count, not once, Your Honor, but twice. So in the first instance, there were Kelly issues and the government and, and other pleading issues with respect to the causal nexus. And the government had a second shot, a second bite at the apple, and they come back and they add these additional facts. And the additional facts are about advertising and it's about actions by FCA. The FCA is engaging in as part of their job to sell cars. In fact, the government now says that every single person that works for a car company, whether it's an administrative assistant or a janitor, that all of their goals are to sell cars. And that can't be true. It shows the sort of overbroad manner in which the government is trying to use the wire fraud statute and it's not the first time. So the facts alleged here specifically do not provide any information to Mr. or how it is that he was involved in selling cars. And it specifically contradicts the government's own allegations in the indictment about his role as a diesel calibrator, albeit at a subcontractor. So that, Your Honor, I hope answers your question, but that's our position as to why this is an issue that should be affirmed at this, at this stage, as opposed to before a jury. Just a few other points. I agree that, that Kelly is likely not relevant here, except for the fact that it's important background here. And the reason why Kelly is important is, is as background, there were Kelly issues in the initial indictment when Judge Edmonds dismissed the original indictment. By the way, the original indictment was a different charge. This is a 1349 wire fraud conspiracy. But in the prior case, it was a, it was a 371 wire fraud conspiracy. So, you know, those statutes are largely the same conspiracy statutes that have different statutory maximums, but the original indictment also included a wire fraud conspiracy that was dismissed as well as substantive wire fraud counts. And again, the reason why Kelly is important is it shows you what the government is trying to avoid. And it's exactly what Judge Edmonds said. Judge Edmonds said, this is a repackaged theory to show some connection between Mr. Palma and customers or marketing to avoid the Kelly problem. And that's when you have the government adding things about marketing. Curtis, I just don't see how you can determine in advance of the trial that that effort will fail, the effort to connect him to customers. Here's what I would say. Judge Edmonds is right on the law, but she doesn't have the facts yet. Your honor, she has the facts in the indictment and the indictment, the government is required to allege facts in indictment that are not just reciting the statutory elements. They have to add facts in the indictment, which allow the, the, it doesn't have to, the government doesn't have to plead specific interactions between Mr. Palma and others within the company. So we don't know who Mr. Palma interacted with. We don't know yet whether he interacted with people in marketing. I mean, the government may well fall flat on its face on that effort, but, but it's a little hard for me to see how we know that today. Your honor, respectfully, and I apologize to disagree again, but the truth of the matter is, no, you're supposed to, fair enough, fair enough, your honor. That's the purpose of this discussion. Your honor, let me ask you to, to do this. When you read through this indictment, there are in effect in the government, this isn't in dispute, there is a regulatory fraud, right? The Clean Air Act frauds where the government takes 36 pages to lay out how Mr. Palma allegedly conspired with his co-conspirator to lie to the EPA. They tell you about meetings that he attended where he lied to the EPA. They cite email after email where the co-conspirators talk about how they can't meet the standards or they're engaged in cycle beating. There are 36 pages of detail that the government included. Then you turn to the wire fraud conspiracy and there are allegations about him receiving advertising. So they had the opportunity to tell Mr. Palma and the court what his role was in advertising. By the way, there is no role. They don't allege it. He's a calibration engineer. So my point is, your honor, they had a duty for the purposes of double jeopardy, for the purposes of the precedent from this court in Landham and others to set forth in the indictment what the facts were, not all of the facts, but sufficient facts to make out a pleading of wire fraud conspiracy. And they failed. They failed dramatically by alleging things like stickers on the car, right? No, but maybe the government's not alleging that Mr. Palma had anything to do with that, but what's the relevance of that? There is no relevance. It doesn't prove that Mr. Palma is part of the conspiracy. So I can see absolutely that it is rare in a criminal case for a motion to dismiss to be granted, and in this case twice, the first two times it's ever happened for me. So I remember well, and I understand that's rare, but that does not relieve the government of its obligations to plead the indictment properly. I'm happy to, I see my time is up. I'm glad to tell you anything in my outline, but I hope that was helpful. And if I can answer any questions, I'm happy to. Okay. Well, thank you, Mr. Thank you for your time. Mr. Lange. Thank you, Your Honor. Good afternoon again. Just three brief points on rebuttal. First, opposing counsel faulted us for failing to actually allege that Palma did have those two goals, a regulatory goal and a marketing goal. I would refer this court first to paragraph 36 of the superseding of the scheme was A, to make and cause others to make false and misleading representations to the regulators, and B, make and cause others to make false and misleading representations to the customers in an effort to increase sales and promote the subject vehicles. Similarly, at paragraph 104, which describes the purpose of the conspiracy specific to count eight on page 38, the purpose of the conspiracy was A, lying to the regulators and B, lying to purchasers and potential purchasers. So certainly the superseding indictment amply and repeatedly alleges that Palma did have as one of his goals, obtaining money from customers. Second, opposing counsel, again, I think like the district court and as in his brief, elides the fact that Palma is charged with conspiracy under 1349, not substantive wire fraud. So all that must've been alleged is that he agreed with the intent that wire fraud be committed to commit wire fraud. It's not necessary that he directly committed wire fraud himself. Third and finally, I think opposing counsel's presentation reflects why it's our position that the district court and opposing counsel are applying an improperly heightened pleading standard to the indictment. The government is not required to set forth its entire theory of proof in the indictment. The fact that the government has offered some factual detail in the indictment does not preclude the government from offering additional factual detail at trial. And we ask this court to give the government that opportunity by reversing as to the convergent theory of count eight. Thank you. Okay. Thank you, Mr. Oh yes, of course. Are you all still talking settlement? Uh, so defense counsel's motion filed last week is accurate and the plea negotiations are ongoing. Okay. Well, we certainly would ask that if you reach some sort of resolution to let us know properly. We certainly will, your honor. Thank you. Uh, presumably you can handle these negotiations on your own, but if you need a third party, uh, we have a wonderful mediation office, office. They can be of assistance. I'm not sure they're going to mediate a criminal case. It's time for everything. I appreciate that, your honor. Okay. Well, thank you very much. Thank you. A case will be submitted again. Thank you for your, you know, excellent arguments this afternoon and very good briefing. We appreciate it. Case is submitted and that's our last case on the argument calendar.